CONFEDERATED INDEPENDENT UN-
IONS, Local No. 1, a Voluntary, Unin-
corporated Labor Union, Plaintiff-Ap-
pellant,

v.

ROCKWELL-STANDARD COMPANY, a
Corporation, et al., Defendant-
Appellees,

and

National Labor Relations Board,
Intervenor.

No. 71-1221.

United States Court of Appeals,
Third Circuit.

Argued March 16, 1972.

Decided Aug. 25, 1972.

Harry Alan Sherman, Pittsburgh, Pa.,
for plaintiff-appellant.

James D. English, Asst. Gen. Counsel,
A. E. Lawson, Asst. Gen. Counsel, Ber-
nard Kleiman, Gen. Counsel, Pittsburgh,
Pa., United Steelworkers of America,
Bredhoff, Barr, Gottesman, Cohen &
Peer, George H. Cohen, Washington, D.

C., for appellee, United States Steel Workers.

Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee, Rockwell-Standard Co.

Stephen Solomon, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Chief of Sp. Litigation, N. L.R.B., Washington, D. C., for intervenor in D. C.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and VAN ARTSDALEN, District Judge.

## OPINION OF THE COURT

VAN ARTSDALEN, District Judge.

Plaintiff, asserting it is a labor union representing eighty percent of the production and maintenance employees of the New Castle plant of Rockwell-Standard Company (Rockwell), seeks to invalidate an existing collective bargaining agreement between the United Steelworkers of America (USW) and the United Steelworkers of America, Local Union 4194 (Local 4194) with Rockwell, insofar as the contract concerns employees of the New Castle plant. After various unsuccessful proceedings before the National Labor Relations Board (NLRB), plaintiff filed the present action in the district court, asserting jurisdiction under 28 U.S.C. § 1337.[1] Defendants' motions for summary judgment for lack of subject-matter jurisdiction were sustained. The district court held that the controlling issue

was whether the appropriate bargaining unit should be a single-plant unit or a multi-plant unit, and that this was a matter over which the NLRB had exclusive jurisdiction.[2]

In 1950 the USW was certified by the NLRB as the collective bargaining representative for the employees of the New Castle Transmission and Axle Division of Rockwell,[3] which division operated a single-plant located in New Castle, Pennsylvania (New Castle plant). Local 4194 was the local union that administered the collective bargaining agreements for the USW at the New Castle plant.

From 1950 until 1960 the USW and Rockwell negotiated and executed collective bargaining agreements for the New Castle plant as a single-plant unit. In 1960, the collective bargaining agreement for the New Castle plant was incorporated in a so-called "Company Wide" agreement that included the New Castle plant along with other plants of Rockwell in a multi-plant unit agreement. Thereafter "Company Wide" agreements including the New Castle plant with other Rockwell plants were executed between the parties as multi-plant agreements in 1962, 1965, 1968, and 1971.[4]

In 1968, an employee of the New Castle plant filed a decertification petition with the NLRB, seeking to decertify the USW and Local 4194 as the bargaining representative for the employees at the New Castle plant. The Regional Director of the NLRB, upon receiving the record made before the

1. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." June 25, 1948, c. 646, 62 Stat. 931.

2. The order of Edward Dumbauld, district judge, stated, inter alia: "while determination of the appropriate unit of bargaining is a difficult and important problem in labor matters . . . it is nonetheless a matter confided to the jurisdiction of the National Labor Relations

Board with ultimate direct review by the Court of Appeals, and that therefore the complaint fails to state a cause of action within the jurisdiction of this Court or upon which relief can be granted by this Court. . . . "

3. The union employees were the production and maintenance workers in the plant.

4. By reason of corporate mergers in 1967, the present agreement is between the USW and North American Rockwell Corporation. Defendant, Rockwell-Standard Company, is a wholly owned subsidiary of North American Rockwell Corporation.

NLRB hearings officer, dismissed the petition, stating in conclusion that "the long history of collective bargaining between the parties has resulted in the establishment of a single multiplant unit, and I shall, accordingly, grant the motion to dismiss the instant petition which requests an election in a single-plant unit."[5] Petition to review the Regional Director's decision was denied by the NLRB and a petition for review filed with this court was likewise dismissed. Carangi v. NLRB, No. 17,834 (3rd Cir. June 11, 1969).

Shortly after the decertification petition was filed, the USW removed all the officers of Local 4194 and placed Local 4194 under a trusteeship, which trusteeship has been retained to this date.[6]

On October 27, 1969, plaintiff's president filed an unfair labor charge with the NLRB against Rockwell, asserting as unfair practices: (1) the illegality of the trusteeship, (2) failure of Rockwell to bargain with plaintiff union, (3) the continued recognition of the USW by Rockwell, and (4) the collection of dues check-offs for the USW after receiving revocation notices from the members. The Regional Director of the NLRB, after investigation, refused to issue a complaint because (1) the trusteeship was an internal union matter not subject to an unfair labor charge against Rockwell; (2) the USW was the certified bargaining agent and Rockwell was obligated to recognize the USW as the exclusive agent; and (3) the dues check-off revocations were not effectively executed in accordance with the provisions of the agreement between the USW and Rockwell.[7] An appeal to the General Counsel of the NLRB was denied.[8]

Plaintiff filed a petition for a certification election for the New Castle plant on October 13, 1969. The Regional Director dismissed the petition because the "multi-plant" agreement then in effect (until 1971) barred an intervening certification election under the "contract bar" rule of the NLRB. On appeal, the NLRB upheld the Regional Director because "the single plant unit sought [had] been effectively merged into a broader multi-plant unit," and "the facts . . . are insufficient to warrant a finding that the requested [single plant] unit is appropriate."[9]

Plaintiff seeks to have the district court declare the present contract between the USW and Local 4194 with Rockwell invalid as "fraudulent, illegal and void," in order that a certification election may be held for the New Castle plant employees, free from the prohibition of the "contract bar" rule. Plaintiff contends that the New Castle plant employees are entitled to elect a single-

---

5. Appendix to brief for Rockwell-Standard Company, 32b, Exhibit C.

6. A trusteeship, as defined in the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 402(h), is designated under the constitution and by-laws of the USW as an "administratorship" and the union was placed under supervision of an "administrator".

7. This same issue also had been submitted to arbitration as a grievance and was decided against the plaintiff's contentions.

8. The General Counsel's opinion stated, in part: "Neither Steelworkers' 1950 certification for New Castle plant only, the trusteeship status . . . nor lack of ratification of the current agreement (for which neither the contract itself nor Steelworkers' rules make provision) would require a conclusion that the recognition of the Steelworkers was improper." The decision refusing to issue an unfair labor practices charge is not reviewable. Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Contractors Association of Phila. and Eastern Pennsylvania v. NLRB, 295 F.2d 526 (3rd Cir. 1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 612; cf. Jacobsen v. NLRB, 120 F.2d 96, 99–100 (3rd Cir. 1941), when the determination was for the Board rather than its General Counsel.

9. It follows that the petition for an election at the New Castle plant was refused as an improper representative unit, irrespective of the application of the "contract bar" rule.

plant bargaining representative because the original 1950 certification for single-plant representation was never formally changed; neither Local 4194 nor the membership thereof ever approved, ratified, voted upon, authorized or consented to including the New Castle plant in a multi-plant unit agreement nor to the terms and conditions of the existing agreement; and the imposition and continuation of the trusteeship over Local 4194 was and continues to be illegal.

■ The law does not require that a collective bargaining agreement be submitted to a local union or the union membership for authorization, negotiation or ratification, in the absence of an express requirement in the agreement, or in the constitution, by-laws or rules and regulations of the union. Cleveland Orchestra Committee v. Cleveland Federation of Musicians, 303 F.2d 229 (6th Cir. 1962); Bruen v. Local 492, IUE, 313 F.Supp. 387, 391 (N.J. 1969), aff'd, 425 F.2d 190 (3rd Cir. 1970); Fogg v. Randolph, 244 F.Supp. 885, 888 (S.D.N.Y.1962). The "Bill of Rights" afforded labor under Section 101 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1), guarantees equal rights and privileges to union members "to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws." The statute does not require submission of proposed agreements or any segments thereof to the membership; nor grant members the right to vote on negotiating, executing and approving contracts. Cleveland Orches-

tra Committee v. Cleveland Federation of Musicians, *supra*. All parties affirm that the present agreements between USW and Rockwell were not required to be submitted to Local 4194 nor to its membership for authorization or ratification by the constitution, bylaws or rules and regulations of the USW or Local 4194. The agreement itself had no such requirement.

■ There being no requirement that the USW submit the agreement to Local 4194 or to the membership, the contention as to the illegality of the trusteeship over Local 4194 is of no consequence to this litigation.[10]

■ The heart of plaintiff's contentions is that the employees of the New Castle plant should not be forced into a multi-plant bargaining unit against their express desires. Since plaintiff asserts that it represents a majority of only the New Castle plant employees, in order to accomplish any of its ultimate objectives, plaintiff must first overturn the NLRB determination that the multi-plant bargaining unit is appropriate. Irrespective of the merits of plaintiff's contentions as to the appropriate unit to represent the New Castle employees, this issue may not be determined or reviewed by a district court. Smith Steel Workers v. A. O. Smith Corp., 420 F.2d 1 (7th Cir. 1969); National Biscuit Division v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101 (1959), cert. denied, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037; Madden v. Brotherhood and Union of Transit Employees of Baltimore, 147 F.2d 439 (4th Cir. 1945).

The NLRB has the exclusive power and duty to determine questions as to the appropriate bargaining unit subject

10. The appropriate remedy to remove an "illegal" trusteeship is provided in Section 304, Subchapter IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 464, giving a right to file a complaint before the Secretary of Labor, or in the district court by "any member or subordinate body of a labor organization affected by any violation." The remedies are alternative. Plentty v. Laborers' International Union of North America, 302 F.Supp. 332 (E.D.Pa.1969); Forline v. Helpers Local No. 42, 211 F.Supp. 315, 319 (E.D.Pa.1962). Plaintiff makes no claim for relief under Section 304, and does not appear to be a proper party complainant under the terms of the act.

to review by Circuit Courts of Appeal. Determination of the proper representative unit is a matter that Congress has left for the expertise of the NLRB. The National Labor Relations Act of 1947, Section 9(b), 29 U.S.C. § 159(b), expressly confers upon the Board the duty to "decide in each case . . . the unit appropriate for the purposes of collective bargaining. . . . "

Although the statute does not specifically refer to multi-plant representation, such determinations by the NLRB have been expressly upheld. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); Howell Refining Co. v. NLRB, 400 F. 2d 213 (5th Cir. 1968); cf. NLRB v. Sun Drug Co., 359 F.2d 408 (3rd Cir. 1966).

The only exception noted in the decisions, whereby a district court may acquire jurisdiction to consider a representation unit decision of the NLRB is in the very limited situation where the NLRB enters an order "made in excess of its delegated powers and contrary to a specific prohibition in the Act." Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958).[11] Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1963), makes clear that the exception is to retain a very limited scope:

> "The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a con-

clusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act." Id. at 481, 84 S.Ct. at 899.

It is clear that the present case does not come within the Kyne exception.

██ The "contract bar" rule, to the extent that such may have prohibited an election or even an investigation as to the proper representation for the New Castle plant employees,[12] is likewise a matter to be applied or waived within the discretion of the NLRB, and has been recognized as appropriate. NLRB v. Libbey-Owens-Ford Glass Co., 241 F.2d 831 (4th Cir. 1957); NLRB v. Grace Co., 184 F.2d 126 (8th Cir. 1950); Local Union No. 492 Bakery and Confectionery Workers v. Schauffler, 162 F.Supp. 121 (E.D.Pa.1958). District courts clearly lack jurisdiction to pass upon the appropriateness of the Board applying or waiving its "contract bar" rule. National Biscuit Division v. Leedom, supra; McLeod v. Local 476, 288 F.2d 198 (2d Cir. 1961).

The several determinations of the NLRB in the present case were neither "in excess of delegated power" nor "contrary to specific prohibition in the Act." The district court could not acquire jurisdiction to review or to alter these decisions of the NLRB. Dismissal of the action for lack of subject-matter jurisdiction was proper.

The judgment of the district court will be affirmed.

---

11. A totally unique situation involving application of the laws of the United States to foreign-flag ships and their crews was permitted district court review in McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), but this is not even arguably applicable to the present case.

12. The Regional Director in dismissing the petition of plaintiff for a certification election at the New Castle plant stated that "because the collective bargaining agreement currently in effect . . . constitutes a bar to investigation of representatives, further proceedings are not warranted at this time."